# CHARLESTON.

## J. E. MANN v. MARY ELLEN MANN.

### Submitted May 6, 1924.   Decided May 13, 1924.

1. DIVORCE—*Habitual Drunkenness After Marriage Ground for Divorce From Bed and Board.*

   Where either husband or wife becomes an habitual drunkard after the marriage, the other may be granted a divorce from bed and board. (p. 446).

2. SAME—*Decree Should be Granted Wife on Cross-bill Where Desertion of Husband Clearly Appears.*

   Where the husband has sued the wife on the ground of alleged desertion, denied by her in her answer and cross bill in which she alleges desertion on his part, and he afterwards abandons his suit, removes to a distant county, later becoming a non-resident of this state, without making any provision for the support of his wife and infant children, and the evidence in support of the cross bill clearly shows that she did not desert him, but on the contrary the desertion was on his part, the prayer of the cross bill praying for relief should be granted. (p. 446).

3. SAME—*Procedure Where Lower Court Denies Relief to Which Party Entitled Stated.*

   In such case, relief having been denied by the lower court and her cross bill dismissed, the appellate court will enter such decree as the lower court should have entered, will reinstate the cross bill and remand the cause for award of alimony in such sum, if any, as the lower court may deem proper upon further proceedings. (p. 446).

Appeal from Circuit Court, Monroe County.

Suit by J. E. Mann against Mary Ellen Mann. From a

decree dismissing plaintiff's bill and defendant's cross-bill, and dismissing the cause, defendant appeals.

*Decree reversed; cause remanded.*

*Thos. N. Read,* for appellant.

*T. G. Mann,* for appellee.

LIVELY, JUDGE:

The decree appealed from dismissed plaintiff's bill for divorce, dismissed defendant's cross bill praying for divorce from bed and board, denied her any relief and dismissed the cause.

The parties residing in Monroe county were married in 1898, and lived together in that county until 1921 when plaintiff, J. E. Mann, instituted suit against the defendant, Mary Ellen Mann, charging her with desertion for a period of ten years prior thereto and asking for an absolute divorce. Four children were born to them, a daughter twenty-four years of age and married, two sons aged respectively twenty-three and twenty-one years, and another daughter eighteen years of age at the time the depositions were taken; the last two resided with their mother. By their joint efforts considerable property had been accumulated, the value of which was estimated to be from $15,000 to $20,000, consisting of farm lands and personal property. However, for some time prior to the institution of the suit it appears that plaintiff had become addicted to the excessive and continual use of intoxicants and was hopelessly involved in financial troubles. The farm and residence were situated on Hans Creek in Monroe county, and on October 6, 1921, the house, which cost about $10,000 to build, was destroyed by fire. Plaintiff had insurance thereon of $7,000. After the destruction of the dwelling, by mutual consent the wife and her two children went to the home of plaintiff's uncle, Mr. Zack Ellison, about a mile away, where they resided at the time of the institution of this suit, the bill in which was filed on the 9th day of February, 1922. The bill charges that the wife, for more than ten years prior to the date of the institution of the suit, had wilfully and without cause deserted the plaintiff and had not lived or cohabited with him since the date of the

desertion.  At the April, 1922, term of the court defendant
filed her demurrer and answer to the bill, in which she denied
that she had wilfully or without just cause failed or refused
at any time to live or cohabit with plaintiff, and avers that
the charge made against her in the bill is totally untrue.  In
her answer she avers that plaintiff is worth at least $15,000,
that she is without suit money, but that she had agreed upon
the amount of alimony, suit and support money to be paid
to her in lieu of her inchoate dower in the real estate which
they had accumulated, and the sum upon which they had
agreed was $3,000, and in pursuance of the agreement she
had joined with plaintiff in a deed of assignment for the
benefit of his creditors, and for like consideration had joined
in a deed from plaintiff to his son for property worth $4,000,
and prayed that she be allowed such reasonable sum agreed
upon by them as alimony, support and suit money, pending
the suit, and for permanent alimony, and for general relief.
At the following May, 1922, term of the circuit court she
filed her amended answer in the nature of a cross bill in
which she alleged that since the marriage and after the chil-
dren had grown up the plaintiff had become addicted to the
excessive use of moonshine intoxicating liquor and had be-
come an habitual drunkard and had neglected his business
and family and had become unkind and unfeeling toward
respondent and had treated her with extreme cruelty, and
had ordered her to leave the farm and go to his uncle's house
with her youngest children; that since the institution of the
suit plaintiff had removed to Wood county and had failed
and refused to contribute to her support or the support of
his youngest child and had abandoned and deserted respond-
ent; and she prayed for a divorce from bed and board, and
for general relief.

The cause was referred to a commissioner who took depo-
sitions and made a report.  Plaintiff failed to take any testi-
mony, and apparently had abandoned his suit.  The testimony
of the wife, her son, the uncle and a neighbor was taken, in
which it appears that plaintiff, for many years prior to the
institution of his suit, had become addicted to the excessive
and continuous use of intoxicants.  Without considering the
evidence of the wife it appears that when he was intoxicated

and at home he became abusive toward his wife, threatened her with violence and made life miserable for her. The uncle says he had noticed that his nephew was in the habit of frequently becoming intoxicated in the later part of his married life, and in his opinion the excessive use of intoxicants had become habitual; that his distressed financial condition was the result of this continued intoxication; that his wife's sojourn in his family after the dwelling house was destroyed by fire was by the mutual consent of himself, the plaintiff and his wife. The son, then twenty-one years old and residing with his mother on rented premises on Hans creek, said the father had become addicted to the use of intoxicating liquor and when in that condition was abusive to his mother; that after the fire his father consented to and directed her removal to Mr. Ellison's home, and since that time had made no effort to provide for her a suitable home and had not contributed to her support or to the maintenance of the family. The neighbor, V. L. Miller, had known the parties during their married life, and says that for some years prior to the institution of the suit plaintiff had become addicted to the use of intoxicants and that his intoxication was habitual; that it caused his business failure, and that after the house was burned the husband had not supported or maintained his family and had directed him, the witness, not to furnish them anything out of his store and charge the same to the father; that he lived within two miles of the farm of the litigants and that during the married life the wife had been a dutiful helpmate and had assisted the husband in accumulating the property; that she was industrious and helpful and he had never observed or heard of any misconduct on her part. It appears that the plaintiff collected the insurance money on the house, amounting to $7,000, and after that time made an assignment for the benefit of his creditors, conveying his real property to a trustee, in which he induced his wife to join; that he then left the neighborhood and went to Wood county without making any provision for the maintenance of his wife and youngest daughter and had practically abandoned them. It appears that since that time he has left the state and become a non-resident.

Upon consideration of this evidence the circuit court dis-

missed the bill and the wife's answer in the nature of a cross bill and dismissed the cause.

We think the evidence justifies the conclusion that since the marriage in 1898 and after the children had become grown, plaintiff, J. E. Mann, became an habitual drunkard. If there was any domestic cause which contributed to the formation of this habit and for which the wife was chargeable it does not appear in the record and there is no suggestion that she was the cause. The statute, section 6, chapter 64, Barnes' Code, expressly provides that a divorce from bed and board may be decreed where either party after marriage becomes an habitual drunkard. We think the evidence warrants a decree in favor of the wife for this cause alone. But we think the evidence plainly shows that plaintiff deserted his wife and family and after he obtained the insurance money and had secured the wife's release of her inchoate dower interest in his lands, making her a creditor to the amount of $3,000 to provide for her interest, suit money and alimony (which appears to have been abortive because of prior debts and for which she has received no benefit) he deliberately removed to a distant county and subsequently out of the state, with the intention of making his abandonment of his family permanent. The evidence entitles her to a decree from bed and board on the ground of desertion.

The record discloses that the son is taking care of his mother and the youngest daughter and providing for their support. The wife has no property or means of support. The record does not disclose the present ability of the husband to earn money or whether he has any income. The custody of the youngest daughter, under these circumstances, should be decreed to the mother. A decree, such as the lower court should have entered, will be entered here, granting to Mary Ellen Mann a divorce *a mensa et thoro* from J. E. Mann, and awarding to her the custody of Thelma Mann, the youngest daughter; and the cause will be remanded for the purpose of ascertaining what amount of alimony, if any, should be decreed in her favor.

*Decree reversed; cause remanded.*